JOHN WHALEN, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Railroad crossing where the view is obstructed — contributory negligence of one crossing the tracks — absence of flagman.*

A party crossing in a wagon the tracks of a railroad, which are so obstructed by embankments that it is impossible for him to see an approaching train before reaching the tracks, is, nevertheless, bound, after he gets to the tracks and in a position to see, to look up and down as far as he is able, and his failure to do so constitutes contributory negligence on his part.

The fact that a party injured upon a railroad had, at times, seen a flagman at the place where he was injured, in the absence of evidence that he had habitually seen a flagman there, does not justify his assuming, in the absence of the flagman, that it is proper for him to cross the tracks.

*Kellogg* v. *The New York Central and Hudson River Railroad* (79 N. Y., 72) distinguished.

APPEAL by the plaintiff John Whalen from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 15th day of April, 1889, after a trial before the court and a jury at the New York Circuit, at which the plaintiff's complaint was dismissed upon the merits, with costs.

*M. J. Keogh*, for the appellant.

*F. Loomis*, for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover damages for personal injuries sustained by the plaintiff because of the negligence of the defendant. Upon the trial the complaint was dismissed apparently on the ground of the contributory negligence of the plaintiff.

It appears from the evidence that the defendant is engaged in operating the New York Central and Hudson River Railroad, and that on the 27th of May, 1887, the plaintiff was driving an ice wagon, drawn by two horses, along Two Hundred and Sixth street, and while traveling upon that part which is crossed by the tracks of the railway was struck by defendant's engine and injured.

It further appeared that the plaintiff was going to deliver ice to a customer, whose store was on the west side of the track, and the

plaintiff was obliged to cross the track to get to the store to deliver ice. The street through which he was traveling descends to the track at a steep incline, running east and west and the defendant's tracks north and south. On the northerly side of the street there is a cut in the rock and trains in this cut are not visible to persons coming down the incline, and defendant's trains passing through this cut could not be seen for any great distance on account of the embankments, except from a point 100 feet east of the east rail of the easterly track, so that after a person passed that point there was no view along the tracks until the tracks themselves were reached.

The plaintiff swore that he had delivered ice at this store many times, and that he had before, at times, seen a flagman where this street crossed the track; that there was no flagman at the crossing at the time of the accident, and as he approached the track he was on the lookout for all signals and did not know anything until he was struck by the train. It further appears from his evidence that he was driving his horses upon a jog, not exactly a trot, faster than a walk, and had a big ice wagon; that he did not hear anything; that he was on the track before he saw the train; and that he neither stopped before crossing the tracks, nor did he look up or down after he got to the tracks, but that he looked straight ahead and went straight ahead. It further appears, from the construction of his wagon, that, without making some effort, it was impossible for him to look other than straight ahead, and that the first that he noticed the train, the horses were across the west track, and the next instant the plaintiff was hit. In another place he says the first he saw of the train was when the horses were between the rails of the track. This evidently refers to the rails of the west track, he having crossed the east track and having got on the west track before the accident occurred.

It seems to us that here was conclusive evidence of contributory negligence. Conceding that, until plaintiff reached the track, it was impossible for him to see an approaching train, yet he was bound, after he got to the tracks and in a position where he could see, to look up and down as far as he was able. This he utterly failed to do, or to make any use of his eyes whatever, looking straight ahead. It is clear that if, after he got beyond the cut, he had looked to see whether any trains were approaching he could have seen them.

But he took no such precaution. He took the risk and the accident was the result.

It is claimed, because he saw no flagman there and because he had before seen a flagman there, he had a right to assume that the passage was clear. But the difficulty is, that he had not habitually seen a flagman there. He testified that he had seen a flagman there at times, and, therefore, he knew that it was not the habit to keep the flagman there, and the absence of the flagman under such circumstances offered no invitation to him to cross the track without using ordinary precautions.

It is claimed that the case of *Kellogg* v. *New York Central and Hudson River Railroad Company* (79 N. Y., 72) is almost identical with the case at bar. An examination, however, shows a very material difference between that case and the case at bar. The deceased approached the track in a one-horse wagon; he was driving on a slight trot with one hand and holding a pail of butter in the other; that he was familiar with the locality, living near the crossing, and that he approached it when trains were due from both north and south, the wind was blowing from the north. The deceased was seen a moment before he was struck looking towards the north from which a train was then due; that the train approaching from the south struck and killed him. It was claimed that if he had looked towards the south he would have escaped harm. A verdict for the plaintiff was set aside by the General Term on the ground that the complaint should have been dismissed because of the contributory negligence of the deceased. The Court of Appeals held this was error, upon the ground that it was not proved that he was heedless; that the evidence showed that the deceased was apparently aware of the danger and that a train was at that time to be expected from the north, and there was also some obstruction interfering with sight in that direction. For a moment before the collision he was looking in that direction and the court say: "We cannot say that at that particular time he should have looked toward the south." And, under all the circumstances, the court thought that it was for the jury to determine whether he exercised that care which the law required of him.

In the case at bar the evidence absolutely fails to show the

slightest attempt upon the part of the plaintiff to ascertain whether any trains were approaching, but he looked straight ahead, and his view straight ahead was limited by the construction of his wagon. He drove across the track heedlessly, taking no precautions whatever to look out for passing trains.

The facts are, therefore, essentially different from those of the *Kellogg Case;* and as the burden of proof is upon the plaintiff to show that he was not guilty of contributory negligence, there was no evidence from which a jury could infer that he had not been so guilty. The court was, therefore, right in dismissing the complaint and the judgment should be affirmed, with costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed, with costs.